# Richmond.

## SOUTHERN RAILWAY COMPANY v. J. JORDAN LEAKE AND A. S. BUFORD, JR.

### November 13, 1924.

1. APPEAL AND ERROR—*Conclusiveness of Verdict—Issues of Fact are Concluded by the Verdict—Limitation of Actions—Diversion of Water Course—Case at Bar.*—In the instant case, an action for damages for diversion of a water course by a railroad company, it was claimed by the company that the structure causing the diversion was permanent and that the right of action accrued immediately upon its completion, and as five years had elapsed since completion, the action was barred; whereas plaintiffs claimed that no appreciable damage accrued until several years after the completion of the structure and, therefore, the action was not barred.

   *Held:* That this issue of fact was concluded by a verdict in favor of plaintiffs.

2. ACTIONS—*Cause of Action—When Cause of Action for Damage to Real Estate Arises.*—Where there is a permanent structure, causing immediate damage to real estate, the cause of action at once arises; but where the damage to the real estate arises from a cause not then immediately effective, then a different principle is applicable and the cause of action does not arise until the injury can be shown. The reason and justice of this is perfectly apparent, for a plaintiff who merely feared ultimate damage to his property under such circumstances would invite defeat if he only relied upon his fears and was unable to prove any actual damage.

3. WATERS AND WATER COURSES—*Diversion of Stream—Action for Damages—Evidence—Commissioner's Report of Sale—Case at Bar.*—In the instant case, an action for damages to land by the diversion of a stream by a railroad company, the crucial issue was at what time the diversion injured the land, and it was objected that the court excluded a commissioner's report of the sale of the property drawn by one of the plaintiffs, who merely acted as an attorney, and did not assume to know any of the facts, in which report it was stated that the diversion had already caused some injury.

   *Held:* That the evidence was clearly hearsay, that the report had no probative value either as to the actual damage or as to the time when

it occurred, and that the best evidence of this was otherwise available, and that if the ruling could be criticized the error was harmless.

4.  AMENDMENTS—*Action for Injury to Land by Diversion of Stream—Striking from Declaration all Reference to Assignment of the Right of Action.*— In an action for damage to land from the diversion of a stream, the evidence introduced by plaintiffs showed that all the damages to the land occurred after the plaintiffs had acquired the title. Therefore, it was proper to allow the plaintiffs to amend their declaration, after all their evidence had been introduced, by striking out of a count in the declaration all reference to an assignment of the right of the action, if any, which existed at the time the plaintiffs acquired the title.

Error to a judgment of the Circuit Court of Amherst county, in an action of trespass on the case.    Judgment for plaintiff.    Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. T. Coleman, Jr.,* for the plaintiff in error.

*Volney E. Howard,* and *William Kinckle Allen,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This case is so much like *Southern Railway Company* v. *Watts,* 134 Va. 503, 114 S. E. 736, that we might be justified in contenting ourselves with saying that it is thereby controlled. Inasmuch, however, as the attorney for the company vigorously and insistently urges us to reconsider and overrule that case, it may be proper for us to say more. Upon such reconsideration of that case, we are fully confirmed in the views there so well expressed and supported by reason and the authorities therein cited.

The pertinent facts are, that the railway company, in the construction of its double tracks, changed the course of Rutledge creek just as it left the land now

owned by Leake and Buford, and ran from that point on its own right of way from the northern side of its track, under it and through an ample culvert, to the southern side of the track.   The company closed this culvert, and this made it necessary to supply a new channel for the creek at that point.   This was done by diverting its course upon the right of way of the company, and confining it there to the north side of its double tract, as a substitute for the old channel. All of the water of  the creek, which had theretofore passed away from the lands of the plaintiffs to the other side of the railway track, was thus forced into the new channel upon the north side of the railway embankment adjacent to their lands.   The plaintiffs, Leake and Buford, recovered upon the claim that the market value of their land has been thereby seriously and permanently impaired.

The chief controversy is as to the statute of limitations, the company claiming that as the railway embankment is permanent and was completed in 1914, while the action was not brought until November 30, 1920, it is barred by the five year limitation.

The evidence for the plaintiffs clearly shows that the damage to the lands was not immediate and not perceptible until the year 1916, or 1917.

[1] The issues are, then, identical with those raised in the *Watts Case*, and the issues of fact are concluded by the verdict.   For the railroad company it is claimed that as the structure was and is permanent, the right of action immediately accrued upon its completion, and as five years had elapsed before the action was instituted, it is barred; whereas, on the other hand, the plaintiffs claim that as there was no damage, or none which could be appreciated or proved, until 1916, or 1917, therefore the right of action then first accrued,

.and that the plea of the statute of limitations cannot therefore be maintained by the company.

[2] Supplementing the citations in the *Watts Case* by the note to *Mast* v. *Sapp*, 5 L. R. A. (N. S.) 379, (140 N. C. 535, 53 S. E. 350, 111 Am. St. Rep. 864, 6 Ann. Cas. 384), it is seen that additional authority is not lacking.   Undoubtedly where there is a permanent structure, causing immediate damage to real estate, the cause of action at once arises, but where the damage to the real estate arises from a cause not then immediately effective, then a different principle is applicable and the cause of action does not arise until the injury can be shown.   The reason and justice of this is perfectly apparent, for a plaintiff who merely feared ultimate damage to his property under such circumstances would invite defeat if he only relied upon his fears and was unable to prove any actual damage. So the courts have formulated the general rule thus: Whenever any injury, however slight it may be, is complete at the time the structure is completed, the cause of action then accrues; but whenever the structure is not legally injurious there is no cause of action until such injurious consequences occur, and it accrues at the time of such consequential injury.   If the act complained of is perfectly lawful, so far as concerns the person who alleges such an injury to his property, the cause of action does not accrue until he can show that such injury has been sustained.   *Bank of Hartford Co.* v. *Waterman*, 26 Conn. 324; *Houston Waterworks* v. *Kennedy*, 70 Tex. 233, 8 S. W. 36.

In *Savannah A. & M. R. Co.* v. *Buford*, 106 Ala. 303, 17 So. 395 (an action for damages for obstructing the flow of surface water by the construction of a railway embankment), the principle is thus stated: "If the thing complained of is not necessarily injurious,

or is not an invasion of the rights of another, of itself affording no cause of action, then whatever of legal injury may result from it furnishes a cause of action accruing when the injury occurs."

It is thus expressed in *Sterrett* v. *Northport Min. & Smelting Co.*, 30 Wash. 164, 70 Pac. 266: "An action to recover damages for an injury cannot be sustained until the injury actually occurs, although it may be apparent that injury will inevitably result. A cause of action to prevent the injury by injunctive relief might exist, but a cause of action to recover damages commences to run from the time the damages occur by the injury or destruction of property claimed to have been damaged."

It is also maintained in *New York, etc., R. Co.* v. *Hamlet Hay Co.*, 149 Ind. 344, 47 N. E. 1060, 49 N. E. 269, in which the natural flow of a river was obstructed by a railway embankment, and the complainant did not own the land at the time of its construction.

Other citations might be made to sustain this view, but those here cited, together with those cited in the *Watts Case*, show that there is ample authority therefor. That it is based upon sound reason and common justice, and therefore needs no other support, is also apparent. These principles were enforced by the trial judge, and we do not doubt that they are perfectly sound.

This main question was raised by the instructions given and refused, and by motion to set aside the verdict of the jury. The court was consistent in its rulings, fairly submitted all questions of fact to the jury and denied the company no substantial right.

[3] It is objected that the court excluded from the consideration of the jury as evidence a commissioner's report of the sale of the property, which occurred in

1915, pursuant to decrees in a chancery suit for the settlement of the estate of A. L. Hunt. This report was drawn by Leake, one of the plaintiffs here, but he was merely acting as attorney, and did not know or assume to know any of the facts; the evidence was clearly hearsay, and, as held in the *Watts Case*, it has no probative value either as to the actual damage or as to the time when it occurred. The best evidence of this was otherwise available to the company, and if the ruling can be fairly criticised the error was harmless.

[4] Another exception is that the plaintiffs were allowed to amend the declaration after all of the evidence on behalf of the plaintiffs had been introduced. This amendment consisted in striking out of a count in the declaration all reference to an assignment of the right of action, if any, which existed at the time the plaintiffs acquired the title from the commissioner of the court. The reasons actuating the plaintiffs being that they had withdrawn the evidence of such assignment and relied solely on their testimony which tended to show that the land had sustained no damage at that time, so that they were not dependent upon any such assignment of the right of action. The evidence introduced by the plaintiffs, if true, showed that all of the damages to the land occurred after the plaintiffs had acquired the title. The court would have erred if it had refused permission to make this amendment. Section 6104 of the Code expressly provides that "the court may at any time, in furtherance of justice, and upon such terms as it may deem just, permit any pleading to be amended, or material supplemental matter be set forth in amended or supplemental proceedings. The court shall, at every stage of the proceedings, disregard any error or defect which

does not affect the substantial rights of the parties. If substantial amendment is made in pursuance of this section, the court shall make such order as to continuance and costs as shall seem fair and just." *Standard Paint Co.* v. *Vietor*, 120 Va. 595, 91 S. E. 752.

Following the *Watts Case*, we find no error in the proceedings.

*Affirmed.*