# Wytheville

## Chessie Stephens v. Virginia Electric and Power Company, a Corporation.

June 6, 1945.

Record No. 2931.

Present, All the Justices.

The opinion states the case.

*Louis B. Fine*, for the plaintiff in error.

*T. Justin Moore* and *Archibald G. Robertson*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Chessie Stephens, the plaintiff in error, instituted an action at law against Virginia Electric and Power Company for personal injuries sustained by her and a jury found a verdict in her favor for $2,000. Upon motion of the defendant,

the trial court set the verdict aside and entered final judgment in its favor, on the ground that no actionable negligence of the defendant had been disclosed by the evidence.

Mrs. Stephens, who will be referred to as the plaintiff, and her husband, operated a cafe at the corner of 25th and Granby streets in the City of Norfolk. On April 1, 1943, after having finished her work at the cafe, she left and walked across the sidewalk to her automobile which was parked parallel to the curb on Granby street. The defendant maintained an electric pole located in front of the cafe, about sixty feet from the corner and the car was parked beside the pole. On the pole the defendant maintained a switch box about ten feet above the ground, which housed a switch. Through its underground connections, the switching device automatically threw the switching rails at the intersection of 25th street in order that street cars might proceed either on 25th street or upon Granby street without having to throw them manually. As the plaintiff attempted to get into her car, she claims to have been injured by electricity which escaped from the switch box. Her version of what occurred is as follows: "Gentlemen of the jury, and Judge, your Honor, when I came out of the cafe to catch hold of the door to my car that was parked under the pole, I opened the door and put my foot up on the curb and that time a street car came up and then all at once something exploded on top of my head—fire— and struck me in my ear, and that is the last thing I remember".

The plaintiff was largely corroborated in her statement by another witness who was with her at the time. He said "And when she got near the car she was close to the pole and I was approximately about four or five feet from her, and I saw the light of the electricity and it hit right in the back of her ear—somewhere over here, anyway (indicating), and at the minute I got scared, I didn't know what happened—I run right over to help her * * * . That is what happened in the whole thing".

██ The expert witnesses and the preponderance of the testimony from all of those familiar with the operation of this particular appliance shows that it was impossible for the plaintiff to have been injured in the manner described by her. However, upon this writ of error, she having recovered a verdict, and her version having been corroborated by another witness, under well settled principles, we must accept her statement even though it is against the decided preponderance of evidence.

The notice of motion for judgment which was filed by the plaintiff alleged that "through the carelessness and negligence of the defendant in and about the operation and maintenance of a certain switch box located on the south east corner of 25th and Granby streets in the City of Norfolk, Virginia, caused a bolt of electricity to strike the undersigned plaintiff all over her person and particularly to her head, eye, cheek, nerves, arm and ear, and as a consequence of said bolt striking the plaintiff as aforesaid, she sustained much pain, etc.".

It is conceded that in order for the plaintiff to have sustained a recovery she necessarily was compelled to rely upon the doctrine of *res ipsa loquitur.* If she is entitled to recover her recovery must be based upon presumed negligence, for no actual negligence was disclosed.

All of the evidence discloses that the defendant exercised proper care in the acquisition of the switch, that it properly installed it, and that it properly inspected it.

The evidence discloses that the coil in the switch had burned out causing a gap of almost an "inch or a little wider". An inspection of the switch an hour after the accident disclosed that nothing else was out of order. The coil was immediately replaced and the device thereafter worked perfectly. It appears that there are no moving parts in the device and there is no friction or wear and tear on it as usually is the case where there are moving parts. The coil in this type of switch seldom burns out, and its life is indefinite. Some of them have been in operation by

the defendant for fifteen or twenty years without being replaced. However, infrequently, they do burn out. As expressed by a witness, "those coils are sort of like your street lamps or your fuses in your home; there is no regular time for them to burn out". When a coil burns out an arc occurs which occasions a flare from the switch box, but every expert testified that there was no danger when the coil burns out because the current automatically is cut off.

The switch is constructed to carry the necessary voltage required to throw the switch rails. This required voltage is from a maximum of 600 volts down to 550 volts. A direct current of electricity, as distinguished from an alternating current, flows into the switch from an auxiliary overhead wire strung from the trolley wire to the switch. As the street car passes the switch box at from three to four miles per hour the switch rails at the corner are thrown automatically. One characteristic of the direct current is that it does not build up an excess of electricity. It is uncontradicted that there was a proper ground wire, properly guarded, running from the switch box to the ground and welded to a piece of pipe which was driven in the ground five or six feet.

The switch used in this instance is standard equipment and in use in nearly all large cities in the United States. It requires only routine maintenance and is almost free from failures. It is known as the Cheatham switch and has been manufactured and sold throughout the United States for the past twenty-four years. It is uncontradicted that no accident from this type of switch, such as was claimed to have been suffered by Mrs. Stephens, the plaintiff, has ever been heard of before that time. It is also uncontradicted that no one could have foreseen that such an accident would or could have happened. It is further established by evidence which is not disputed that the switch here involved was installed, maintained and inspected by the defendant in the approved and proper manner. Every precaution required by the best and approved practice applicable to devices of

this kind was shown by the uncontradicted evidence to have been taken and applied in regard to this switch.

It is true the plaintiff introduced an electrician who is employed by the Virginian Railway Company and he testified that he was familiar with automatic switches, but he admitted that he had never seen or inspected the switch in question and that he was not familiar with the Cheatham switch and did not know what kind of coil or fuse was in it. He said that if an excessive amount of electricity is built up in the switch and is not utilized it would eventually explode, and if it is not properly grounded a person standing under it might serve as the "ground" and be injured. However, it was shown that the direct current flowing into this particular switch did not build up, and it was also shown that the switch was properly grounded. There was no evidence that this particular switch ever carried more than 600 volts of direct current.

In order for the plaintiff to recover in this case it was necessary for her to show that the defendant breached a duty which it owed her and which was the proximate cause of her injury, for actionable negligence implies a duty, a violation thereof, and a consequent injury. The absence of any one of these elements is fatal to the claim. An accident which is inevitable or not avoidable by the exercise of that precaution which is expected of the ordinary man, or which is not reasonably to be foreseen by a man in the exercise of reasonable caution and prudence may not be made the ground for a negligence action.

In *Roanoke R., etc., Co.* v. *Sterrett*, 108 Va. 533, 62 S. E. 385, 128 Am. St. Rep. 971, 19 L. R. A. (N. S.) 316, the plaintiff was riding on a street car which was passing over a bridge. The bridge collapsed and she was injured. In her action, brought against the street railway company, the evidence disclosed that the bridge had been properly inspected. This court denied a recovery, and, speaking through Judge Harrison, had this to say:

" 'Where an accident arises from a hidden and internal

defect, which a careful and thorough examination would not disclose, and which could not be guarded against by the exercise of a sound judgment and the most vigilant oversight, then the proprietor is not liable for the injury, but the misfortune must be borne by the sufferer as one of that class of injuries for which the law can afford no redress in the form of a pecuniary compensation'. Hutchinson on Carriers, vol. 2, secs. 903-4 (3rd ed.). The liability of a carrier of passengers as thus defined is now almost universally adopted.

"As a matter of course, there can be no negligence where there is no breach of duty. It must appear, therefore, not only that the defendant owed a duty, but also that he did not perform it; and if the accident complained of was inevitable, it is not a case of negligence. An accident is inevitable, if the person by whom it occurs neither has, nor is legally bound to have, sufficient power to avoid it, or prevent its injuring another. In such a case the essential element of a legal duty is wanting, and it cannot, therefore, be a case of negligence. Shearman & Red. on Neg., vol. 1, secs. 15-16."

In most jurisdictions it is held that the presumption arising from the *res ipsa loquitur* doctrine constitutes evidence sufficient to take the case to the jury even though the defendant introduces evidence which, if true, would be sufficient to rebut the presumption of negligence. See 38 Am. Jur., Negligence, sections 309, and 355. But this is not the rule in Virginia. Here the presumption of negligence raised by the application of the doctrine is entirely overcome where properly refuted by sufficient evidence.

In *Richmond* v. *Hood Rubber Products Co.*, 168 Va. 11, 190 S. E. 95, 142 A. L. R. 246, we said it was first essential to the application of the doctrine that the cause of the accident be undetermined. In the case at bar the cause was determined—it was the burning out of the coil in the switch.

We said in *Norfolk Coca-Cola Bottling Works* v.

*Krausse*, 162 Va. 107, 173 S. E. 497, that the doctrine of *res ipsa loquitur* is an evidential presumption sometimes resorted to in the absence of evidence, but that it is not to be applied when evidence is at hand. In the case at bar the evidence is at hand. See *Riggsby* v. *Tritton*, 143 Va. 903, 129 S. E. 493, 45 A. L. R. 280; *Chesapeake, etc., R. Co.* v. *Baker*, 149 Va. 549, 140 S. E. 648, 141 S. E. 753, and on rehearing, 150 Va. 647, 143 S. E. 299; *Chesapeake, etc., R. Co.* v. *Tanner*, 165 Va. 406, 182 S. E. 239; *Virginia Elec., etc., Co.* v. *Lowry*, 166 Va. 207, 184 S. E. 177, and *Smith* v. *Richmond, ante*, p. 40, 34 S. E. (2d) 371.

In the case at bar there was an entire absence of any evidence which tended to show the existence of a single circumstance or condition which, if followed by the defendant, would have disclosed any defect in the coil.

There is no evidence which establishes or tends to establish that the defendant violated any duty which it owed the plaintiff. It is not even suggested that there are better methods of installation, maintenance, inspection, and operation than those employed by the defendant. In fact, the evidence shows conclusively that there are no better methods than those used by the defendant. In the face of this evidence any presumption of negligence which might have been raised as a result of the application of the doctrine of *res ipsa loquitur* completely disappears. The burden of proving her case rested upon the plaintiff. The evidential presumption of negligence under the doctrine upon which she solely relies having been dissipated by clear and uncontradicted evidence, there remains no evidence to support her case.

The judgment is therefore affirmed.

*Affirmed.*