Robert William SIDES, Appellant,

v.

**RICHARD MACHINE WORKS, INC.,**
Appellee.

No. 12508.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1968.

Decided Jan. 29, 1969.

Allan D. Zaleski, Norfolk, Va. (Richard J. Tavss, and Sacks, Sacks, Kendall & Tavss, Norfolk, Va., on brief) for appellant.

Vincent J. Mastracco, Jr., Norfolk, Va. (Canoles & Mastracco, Norfolk, Va., on brief) for appellee.

Emanuel Emroch and Robert G. Clark, Richmond, Va., filed a brief, as amicus curiae, in support of appellant.

Before SOBELOFF, BRYAN and BUTZNER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

The determinative inquiry here is at what point did the plaintiff-appellant's right of action for personal injuries accrue within the meaning of the Virginia act of limitations. As bearing here, the statute demands that every such action "shall be brought within two years next after the right to bring the same shall have accrued". Va.Code 1950, as amended § 8–24. With jurisdiction resting on diversity of citizenship, the State law is decisive, and the parties agree on the aptness of the cited section. The inception of plaintiff's cause, we think, was within the 2-year period just preceding commencement of the suit.

The order on appeal is in error in dismissing it as time-barred.

On February 1, 1968 Robert William Sides sued Richard Machine Works, Inc. to recover damages for the physical hurt and disability, as well as consequent immediate and future pecuniary loss, resulting from a fall on February 2, 1966. While the plaintiff was operating a gasoline locomotive "on an overhead track" in the Dubuque, Iowa, plant of his employer, the Virginia-Carolina Chemical Corporation, the vehicle derailed and careened, thereby throwing him to the factory floor, some 25 feet below. The locomotive had been manufactured by defendant Richard Machine Works and sold by it to Virginia-Carolina on November 13, 1958. Pleading further, plaintiff declares that the producer and vendor of the vehicle intended that it be run on elevated rails—of 24-inch gauge—and otherwise used by the purchaser's employees in the manner plaintiff Sides was doing when injured. The malfunction of the locomotive is ascribed to the negligence of defendant Richard Machine Works in designing and building it.

This was the complete and unquestioned fact footing of the limitation plea. No question was raised of the plaintiff's right or standing to sue, either as affected by the receipt of workmen's statutory compensation, by want of privity between the employee Sides and the defendant producer-vendor, or otherwise. The District Judge, and not without reason, thought certain Virginia decisional precedents set the inceptive date of the 2-year limitation as the day of the sale of the locomotive by defendant to the plaintiff's employer, November 13, 1958, and not the time of the fall, February 2, 1966.

■ For a claim of the kind here to become actionable these factors are indispensable: (1) a legal obligation of the defendant to the claimant; (2) a commission or omission by the defendant breaching that duty; (3) negligence of the defendant occasioning the breach; and (4) harm to the claimant as a proxi-mate conseqeunce of the breach. Only from the happening of all of these ingredients does a cause of action evolve. Until all of them have become executed actualities, no right of action for the harm is constituted. Virginia's courts have been undeviant in like pronouncement. Trimyer v. Norfolk Tallow Co. et al., 192 Va. 776, 66 S.E.2d 441, 443 (1951); Stephens v. Virginia E. & P. Co., 184 Va. 94, 34 S.E.2d 374, 377 (1945). In *Trimyer* it was expressed in this way:

"To constitute actionable negligence there must be a duty, a violation thereof, and a consequent injury."

■ Here, there was no actionable tort until Sides was hurt. Before that eventuality, of course, a duty, an act or failure to act in violation of the duty, and negligence were outstanding, but no tort was then in being; it was no more than a potentiality or threat. If harm had not ensued, there would have been no tort and nothing to sue on. A right of action cannot accrue until there is a cause of action. Sides could not sue before he was hurt, February 2, 1966. When he did sue, February 1, 1968, his action was seasonable.

This was the formula applied in Louisville & N. R. Co. v. Saltzer, 151 Va. 165, 144 S.E. 456 (1928). Harm or hurt—injury—is expounded as the essential of a tort action, and until its happening there is no cause for suit. The Court declared that this is the event which sets the limitation in motion. It elaborated:

"[W]here the damage * * * arises from a *cause* not then immediately *effective*, * * * the cause of action does not arise until the injury can be shown. The reason and justice of this is perfectly apparent, for a plaintiff who merely feared ultimate damage * * * under such circumstances would invite defeat if he only relied upon his fears and was unable to prove any actual damage. So the courts have formulated the general rule thus: Whenever any injury, however slight it may be, is com-

plete at the time the [act or omission] is completed, the cause of action then accrues; but, whenever the [act or omission] is not legally injurious, there is no cause of action until such injurious consequences occur, and it accrues at the time of such consequential injury. * * *" 144 S.E. at 457, quoting Southern Ry. Co. v. Leake, 140 Va. 438, 439, 125 S.E. 314 (Accent added.)

Undoubtedly the pith of Sides' complaint was flaws in the making of the locomotive, resulting from negligence committed at that time. On this pleading, the District Judge reasoned that the defendant's tort was complete when, in 1958, the defendant delivered its product to the purchaser for its purposed use. The time limitation for suit for the defendant's faults, it seemed to the trial judge, would begin then. He concluded, on the Virginia authorities, that the eventual infliction of harm upon the buyer's employee, in February 1966, was simply a damage flowing as an aftermath of the previously consummated tort. A corollary of this view was that the date of the accident was merely the date of the discovery, not the perpetration, of the tort.

This computation of time, the appellee-defendant argues, was dictated by City of Richmond v. James, 170 Va. 553, 197 S.E. 416, 116 A.L.R. 967 (1938); Street v. Consumers Mining Corporation, 185 Va. 561, 39 S.E.2d 271, 167 A.L.R. 886 (1946); Richmond Redevelop. & H. A. v. Laburnum Const. Corp., 195 Va. 827, 80 S.E.2d 574 (1954); and Hawks v. DeHart, 206 Va. 810, 146 S.E.2d 187 (1966). No parallel of decision with those cases is justified here.

City of Richmond v. James, supra, 170 Va. 553, 197 S.E. 416, 116 A.L.R. 967, was an action for hurt to the plaintiff in the inhalation of gas fumes escaping into her residence from city mains. True, on the defense of limitations the Court observed in its opinion that the statute "begins to run at the time of the commission of a wrongful or negligent act, and not from the time of the dam-age or discovery of the injury". Nevertheless, the Court held that in a sequence of negligently and similarly occasioned bodily injuries, a cause of action is born with each instance of harm. In this, our view finds confirmation.

Street v. Consumers Mining Corp., 185 Va. 561, 39 S.E.2d 271 (1946) dealt with the silicosis death of a miner. He was occupied as a driller from 1928 until, with a slight exception, he terminated his employment in 1936. As he worked he inhaled silica rock dust. X-rays taken in 1940 disclosed the disease; it was diagnosed as contracted from the dust and probably of 10 to 15 years' standing. He died in 1942 and his personal representative sued in 1944 for the loss of his life. The negligence charged was the employer's failure to provide him requisite protection against inspiration of the contaminated air. Under the then limitation of one year, the action was dismissed as too late. The tort was held to have been committed not later than 1936, when the decedent left the mine.

The continuance of the disease was declared to be a damage consequent upon the prior-to-1936 tort. The Court then explained that, as there was no concealment by the defendant, ignorance of the infection did not toll the statute—that discovery of the harm was, not the starting point of the reckoning.

Again, Richmond Redevelop. & H. A. v. Laburnum Const. Corp., supra, 195 Va. 827, 80 S.E.2d 574, passed upon a claim for destruction of property on January 29, 1948, due to an explosion in a gas line which Laburnum had completed not later than February 26, 1943. In a suit filed January 28, 1949, blame for the loss was laid to defective materials and unskillful workmanship in the original installation of the pipe six years before. Applying the appropriate 5-year limitation, the Court held that the cause of action accrued not on the day of the detonation but at the time of the line's construction.

The difference between *Laburnum* and this case is that there the plaintiff declared primarily on the quasi-tort com-

prising the harm done to the pipe line and the negligence of using poor material and deficient workmanship therein. According to the opinion, the harm —the injury—alleged was the hurt done to the pipe line; the explosion was brought in only to establish a consequential damage. The Court again maintained that ignorance or delayed discovery of the injury does not stay the statute—that the limitation runs from the injury, as we hold today, and not from subsequent damage.

Furthermore, in *Laburnum* the cause of action as pleaded arose immediately upon the negligent or defective *installation* of the pipe. Suit therefor could have been brought then, before or without the explosion. Here, plaintiff-employee Sides had no cause of action for the defendant-manufacturer's negligence until he was thereafter hurt by it. Nowhere is *Laburnum* helpful to the limitation defense in our circumstances.

■ We do not attempt to differentiate *Laburnum* on the ground that it was predicated on breach of warranty rather than as here on negligence. The wrong alleged, not the form of action, is what counts in the measurement and application of the appropriate limitation. Friedman v. Peoples Service Drug Stores, Inc., 208 Va. 700, 160 S.E.2d 563, 565 (1968); cf. E. I. DuPont de Nemours & Co. v. Universal M. P. Corp., 191 Va. 525, 62 S.E.2d 233 (1950).

*Laburnum*, however, juxtaposed to the instant action, illustrates that the same original negligence may at once create both (a) an immediate cause of action such as the resulting harm to the pipe line in *Laburnum* or to the employer's locomotive here, with which a right of action accrues simultaneously; and (b) an unripe cause of action not ripening into an actual cause of action until the happening of a future event, such as resulting personal harm to the appellant Sides, when, but not until then, a right of action accrues thereon. The onset of the limitation in both instances commences at the time of the harm, and not before.

In Hawks v. DeHart, supra, 206 Va. 810, 146 S.E.2d 187 (1966), the claim was for personal harm suffered through the negligence of her physician in leaving a surgical needle in the plaintiff's neck, in the course of a goiter operation in 1946, 17 years before. Plaintiff testified that the presence of the needle was not indicated and so not discovered until 1962. Within two years thereafter suit was instituted. For tardiness, the action was dismissed under the present 2-year limitation. The Court reaffirmed its commitment "to the rule that in personal injury actions the limitation on the right to sue begins to run when the wrong is done and not when the plaintiff discovers that he has been damaged".

Nothing in this tenet weakens the decision we reach. The act or omission constituting the harm was done when the needle was left in the patient. The right of action sprang from this cause of action. As there was no concealment by the doctor, the running of the limitation was not intermitted during the quiescent period. Similarly, we say that plaintiff Sides' right of action only came into being when he was hurt.

■ In none of the cases now urged by the appellee-defendant for affirmance has the Supreme Court of Appeals of Virginia departed from its announcements in *Trimyer*, supra, 192 Va. 776, 66 S.E.2d 441; *Stephens*, supra, 184 Va. 94, 34 S.E.2d 374; or Louisville & N. R. Co. v. Saltzer, supra, 151 Va. 165, 144 S.E. 456, to the effect that no right of action is engendered before the harm has been inflicted. An action brought within the statutory period after the hurt is timely. For these reasons we do not think the dismissal of the present action may stand.

Reversed.