**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

**Civ. A. No. 72–C–133–R.**

United States District Court,
W. D. Virginia,
Roanoke Division.
May 31, 1974.

John H. Locke, Gentry, Locke, Rakes & Moore, Roanoke, Va., for plaintiff.

Carroll D. Rea, Daniel S. Brown, Hazlegrove, Dickinson, Smith & Rea, Roanoke, Va., for defendant.

## MEMORANDUM OF FINDINGS ON STATUTE OF LIMITATIONS ON MOTION TO RECONSIDER[1]

DALTON, District Judge.

This is a diversity action filed pursuant to 28 U.S.C. § 1332 on October 12, 1972, by plaintiff Insurance Company of North America, a Pennsylvania corporation. Plaintiff, as assignee, seeks $62,677.27 plus interest from defendant

---

1. On January 4, 1974, this court ruled that plaintiff's right to bring the action as to all counts herein accrued on September 27, 1970, the date of the fire in the Elks Home.' On January 9, 1974, defendant moved the court to reconsider that ruling. Since then, both parties have filed extensive memoranda. The court has consequently chosen to vacate its ruling of January 4, 1974, for the reasons expressed herein, and to substitute this ruling.

General Electric Company, a corporation incorporated under the laws of the State of New York, for damages on a fire loss suffered by plaintiff's assignor, the Grand Lodge of the Benevolent and Protective Order of Elks of the United States of America, at the Elks National Home in Bedford, Virginia (hereinafter referred to as the Elks Home), on September 27, 1970. The facts of the case, as best can be determined by the court at this stage of the proceedings are as follows:

On or about September 27, 1970, plaintiff had in effect a policy of fire insurance covering real and personal property and other incidental benefits for the Elks National Home. During the year 1961, a Hotpoint Model HK–7 Deep Fryer, Serial No. H 4626–7, manufactured by the defendant, was sold to the Elks Home by a Virginia retailer for use in the Home in Bedford, Virginia. The electric deep fryer was placed in service and used in the kitchen at the Elks Home from 1961 until September 27, 1970, when a fire erupted in the fryer, resulting in extensive damage to the building in which the kitchen was located. During the period of time after the purchase of the fryer in 1961, until the fire, the Elks Home had no difficulties with the fryer and it remained continuously in service. After the sale of the fryer in 1961, the defendant had no further contact with the deep fryer in use at the Elks Home, i. e., the defendant supplied no replacement parts for the fryer and performed no servicing on the unit.

Pursuant to its policy with the Order of Elks, plaintiff paid for the damages to the Elks' property caused by the fire, taking an assignment of rights as against third parties. In its status as assignee, plaintiff brings this action to recover from the defendant for the property damage to the Elks Home.

The complaint, which contains five counts, was filed in this court on October 12, 1972, more than ten years after the date of sale and more than two years after the date of the fire. The five counts of the complaint contain allegations of negligence, breach of implied warranty, and strict liability in tort. Counts I and V of the complaint allege negligence on the part of the defendant. Count I is grounded upon the defendant's alleged negligence in the design, construction, manufacture, inspection, and testing of the deep fryer. Count V alleges negligence in the defendant's failure to warn potential users of the alleged defective condition of the deep fryer. Count II of the complaint alleges a breach of the traditional implied warranty of merchantability, or fitness for ordinary purposes, as that warranty was generally characterized in Virginia prior to the effective date of the Uniform Commercial Code.

Counts III and IV both allege liability on the ground of strict liability in tort, as defendant notes, pursuant to the doctrine promulgated by § 402A of the Restatement (Second) of Torts. Count III alleges that the deep fryer was placed in the stream of commerce in a "defective condition," and Count IV alleges that the fryer was placed in the stream of commerce with a "potentially inherent defect."

Since the defendant has set up as a bar to this action the Virginia statute of limitations, and it is conceded that Virginia law applies, the determinative issue before the court at this juncture is at what point a right of action for property damage accrued to the Elks, and what statute of limitations is applicable. As this court had occasion to note recently in a case very similar to this, the Virginia law on this point is far from clear. Eden Corporation v. Utica Mutual Insurance Company, 350 F.Supp. 637, 643 (W.D.Va.1972). The defendant has maintained strenuously that the applicable statutes begin to run as of the date the deep fryer was sold in 1961. Plaintiff, on the other hand, maintains that its assignor suffered no injury to its real property until the date of the fire on September 27, 1970, that there

was no cause of action for property damages until that time, and therefore the statutes do not begin to run until 1970.[2]

The applicable periods of limitation for *ex delicto* actions for property damages are determined by § 8-24 of the Code of Virginia (1957 Rep.Vol.), which reads in pertinent part:

Every action for personal injuries shall be brought within two years next after the right to bring the same shall have accrued. Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued.

 Therefore, if the action is such as will survive the death of a party, the period of limitations is five years. If the action will not so survive, the period of limitations is one year. An action for direct damage to property survives; a claim for indirect damage to property does not. *Cf.* Carva Food Corporation v. Dawley, 202 Va. 543, 118 S.E.2d 664 (1961).

Virginia has a three-year period of limitations for breach of an implied warranty. Code of Virginia § 8-13 (1957 Rep.Vol.). Section 8.2-725 of the Code of Virginia (1965 Added Vol.) provides for a four-year period of limitations for breach of any contract of sale under the provisions of the Uniform Commercial Code, if the Code is applicable.

## Counts I and II

Richmond Redevelopment & Housing Authority v. Laburnum Construction Corporation, 195 Va. 827, 80 S.E.2d 574 (1954) (hereinafter, *Laburnum*), the key Supreme Court of Virginia decision bearing upon the issues raised herein, warrants close scrutiny. In *Laburnum*, a defective pipe joint was installed some six feet underground. Over five years later, gas escaped from the pipeline through the faulty union and caused an explosion, damaging a dwelling unit. The plaintiff had no knowledge that the pipe was defective and it was undisputed, as in the case at hand as to the alleged defect in the deep fryer, that obtaining that knowledge would have been difficult, if nigh to impossible. The plaintiff sought to recover for damage to the building caused by the explosion in a three count declaration: Count 1 charged a breach of express warranties allegedly made after the work was completed; Count 2 charged a breach of an implied warranty of skill and workmanship ("*quasi-tortious* conduct directed at the property itself," *Laburnum*, 80 S.E. 2d at 578); and Count 3 charged fraud and deceit allegedly committed after the work was completed, which allegedly induced payment of the contract price, as allegedly did the warranty in Count 1.

As to Count 2, the court concluded that the breach of implied warranty or skill occurred on the day that the defective work was performed, sometime in late 1942 or early 1943. The installation of the allegedly faulty pipe joint was characterized as a direct injury by the court, insofar as Count 2 was concerned, but it held that even under the applicable five-year provision contained in § 8-24 the count was time-barred, as the ac-

2. Persuasive policy arguments can be made for both sides of the issue involved here, though neither approach is without its problems. *See, e. g.,* Strict Liability Unmasked: The Applicable Statute of Limitations, 27 Wash. & Lee L.Rev. 382 (1970).

The court is mindful that its role is not to change existing Virginia law, but rather is to ascertain what that law is and to apply it correctly:

The federal court must keep in mind . . . that its function is not to choose the rule that it would adopt for itself, if free to do so, but to choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt. C. Wright Federal Courts 240 (2nd ed. 1970).

tion was not brought until 1949. *Laburnum*, 80 S.E.2d at 578, 583. As to Counts 1 and 3, the damage to the dwelling unit was held to be indirect and "consequential" and subject to the one-year limitation of § 8–24 for such damage. The statute of limitations on these two counts began to run, however, not on the day the defective work was performed, but on the date the last "periodical estimate for partial payment" was executed by the defendant, which was not later than August 15, 1944. *Laburnum*, 80 S.E.2d at 580–581.

In 1969, a triology of products liability cases was decided under Virginia law: Sides v. Richard Machine Works, Inc., 406 F.2d 445 (4th Cir. 1969); Barnes v. Sears, Roebuck and Company, 406 F.2d 859 (4th Cir. 1969); and Caudill v. Wise Rambler, Inc., 210 Va. 11, 168 S.E.2d 257 (1969). Each of these three cases held that a cause of action for personal injuries arising out of a defective instrumentality does not accrue, and the statute of limitations with respect thereto does not begin to run, until some personal injury is sustained by the plaintiff.

In Sides v. Richard Machine Works, Inc., *supra*, a workman was injured at his employer's plant by an allegedly defective gasoline locomotive which had been purchased by the employer from the defendant manufacturer in 1958. The plaintiff workman was injured in 1966, and filed suit in 1968. The Fourth Circuit held that under Virginia law, the plaintiff's cause of action arose at the time of injury. Even though the alleged defect in the locomotive which eventually precipitated the plaintiff's injury had existed in the locomotive since 1958, the court saw no conflict in its decision and the Virginia rule that "in personal injury actions the limitation on the right to sue begins to run when the wrong is done and not when the plaintiff discovers that he has been damaged." *Sides, supra*, at 448, citing Hawks v. DeHart, 206 Va. 810, 146 S.E.2d 187 (1966). *Hawks*, which is a good example of the application of this tenet, is still good law today in Virginia. *Hawks* was a medical malpractice action against a physician who allegedly left a surgical needle in the plaintiff's neck during a goiter operation in 1946. The plaintiff testified that the presence of the needle was not discovered until 1962. Suit was instituted in 1963. Nevertheless, the action was dismissed, the court holding that the statute had begun to run in 1946 when the wrong was done.[3]

---

3. There has been an effort to effect changes in § 8–24 of the Code of Virginia to end the seeming harshness of results such as that reached in *Hawks. See* George E. Allen III's article Section 8–24—In Need of Amending, 22 Va.Bar News 40–41 (No. 3 Nov.-Dec. 1973).

In addition, since the date of the original ruling on the statute of limitations in this case, identical bills were introduced in the Senate and House of the Virginia General Assembly which would have amended § 8–24 to specifically allow actions such as the one herein. Senate Bill No. 238 had "Died in the Senate" as of March 22, 1974; House Bill No. 796 had been "Carried Over in the House" as of March 22, 1974.

Senate Bill No. 238, offered on February 4, 1974, entitled "A BILL to amend and reenact § 8–24, as amended, of the Code of Virginia, relating to limitations of actions not before specified," reads as follows:

Be it enacted by the General Assembly of Virginia:

1. That § 8–24, as amended, of the Code of Virginia is amended and reenacted as follows:

§ 8–24. Of actions not before specified. —Every action for personal injuries shall be brought within two years next after the right to bring the same shall have accrued; *provided, that a cause of action, other than one for wrongful death, having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances making the injury, defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or might reasonably have been discovered by him, whichever event first occurs; provided further, that in such cases the period shall not exceed ten years from the last act of the defendant giving rise to the claim for relief.* Every personal action, for which no limitation is otherwise prescribed, shall

Barnes v. Sears, Roebuck and Company, Inc., *supra*, is similar to *Sides*. The court held that where the plaintiff bought a bicycle from the defendant store in December, 1964, and was injured while riding the bicycle on August 30, 1965, his cause of action against the store for negligence in inspection and sale of the bicycle accrued at the time of injury and not at the time of sale. Commenting on the liability of the store for damage to the bicycle itself, Judge Butzner stated:

> To be sure, Barnes had a cause of action for damage to his property immediately after he purchased the defective bike, and under *Laburnum* this right of action accrued at the time of sale even though he did not discover the defect until much later. 406 F.2d at 862.

The third case, Caudill v. Wise Rambler, Inc., *supra*, held that the plaintiff, who was injured in 1967 when she was a passenger in an automobile sold to her in 1964 by one defendant and manufactured by another defendant, had timely filed her suit for personal injury in 1967. The court stated that the plaintiff had had a "potential cause of action" for personal injuries since the time she purchased her automobile, and that it matured into an actual cause of action on the date that the personal injuries were sustained. The court further stated that her right to recover for property damage to her automobile accrued at the time of the alleged breach of the implied warranty of fitness on the date of sale.

The defendant contends on the basis of the above cases that the Elks Home suffered sufficient damage upon the sale of the deep fryer in 1961 to set all of the applicable statutes of limitation running at that time. The court would very readily agree with this contention if the only item that the plaintiff sought recovery for was damages to the deep fryer itself. As it is, it is difficult to see how the cause of action for fire damage to the Elks Home could have accrued at the time the deep fryer was purchased, as there was no damage to the Home itself at that time at all. The deep fryer was not a permanent improvement to real estate, as the pipe joint was in *Laburnum*— it was but a piece of cooking equipment.

Nevertheless, there seems to be no way around the simple fact that under Virginia law the warranty that can be implied from the sale of the deep fryer was breached the day of the sale. *See e. g.*, Caudill v. Wise Rambler, Inc.,

---

be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued. The amendment extending the period within which an action for personal injuries may be brought under this section to two years shall not apply to any cause of action arising prior to July one, nineteen hundred fifty-four.

 \* \* \* \*

This proposed amendment is virtually identical to one adopted by North Carolina in 1971, after cases such as the one herein were litigated in North Carolina. N.Car. Gen.Stat. § 1–15(b) (1973 Cum.Supp). *See* State v. Cessna Aircraft Corporation, 9 N. C.App. 557, 176 S.E.2d 796 (1970). In that case two individuals had purchased in August of 1966 an aircraft manufactured by the defendant. In February of 1967, the plane crashed, as a result of an alleged defect, into a building owned by the plaintiff State of North Carolina. In February of 1970, the State filed an action against the manufacturer seeking damages for its building. The Court of Appeals of North Carolina held that the plaintiff's claim was barred under the applicable three year statute of limitations under North Carolina law, as it ruled that the plaintiff's right of action to recover for property damage commenced to run on the date that the plane was sold.

*See also* Sellers v. Friedrich Refrigerators, Inc., 283 N.C. 79, 194 S.E.2d 817 (1973).

North Carolina law, as distinguished from that of Virginia, holds also that in personal injury actions, the applicable statute of limitations commences to run on the date of sale of a product and not on the date of personal injury. *Cf.*, Green v. M. T. D. Products, Inc., 449 F.2d 757 (4th Cir. 1971). The North Carolina case law is therefore not instructive as to the result that this court should reach.

*supra*, 168 S.E.2d at 259. Under § 8–13 of the Code of Virginia, which applies to implied warranties, the period of limitations on the warranty count ran some three years after the date of the sale. Plaintiff has advanced no theory under which the implied warranty may be "resurrected" years later, in 1970, to include damage to property, especially property not originally covered by the implied warranty.[4]

As to the warranty count, Count II, the court must conclude that the applicable statute of limitations began to run as of the day the deep fryer was purchased by the Elks in 1961, and consequently, this count is time-barred.

Under Virginia law, however, the negligence count cannot be said to be similarly barred. This conclusion is based simply upon the undeviating pronouncement of the Virginia courts that no right of action on a claim of negligence arises until there has been an initial injury. The Supreme Court of Virginia expressed it in this manner in Trimyer v. Norfolk Tallow Co., et al., 192 Va. 776, 66 S.E.2d 441, 443 (1951):

> To constitute actionable negligence there must be a duty, a violation thereof, and *a consequent injury*. (Emphasis supplied.)

The defendant herein maintains that the Elks Home was "nominally" damaged at the moment the deep fryer was installed in 1961, citing supposedly supportive language from the silicosis death case of Street v. Consumers Mining Corp., 185 Va. 561, 39 S.E.2d 271, 272 (1946), quoted in *Laburnum, supra*, 80 S.E.2d at 581:

> [W]here an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor

the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action and is not legally severable from its consequence. The statute then begins to run, and not from the time of the damage or discovery of the injury.

This principle, however applicable in *Laburnum*, cannot justly be applied to the case at hand. Even though the initial injury in *Laburnum* was a defective fitting buried some six feet underground, it was nevertheless a defect in a part of the housing unit ultimately damaged. The distinction between *Laburnum* and this case is that in that case the plaintiff declared primarily on the *quasi-tort* of the initial injury done to the gas line and the negligence of using poor material and deficient workmanship in installation—all of which conduct was directed at the housing unit itself. According to the opinion, the harm done was to the gas pipe, and even though this initial injury was very slight, it gave rise to a cause of action for damages *ab initio*. On the other hand, the deep fryer involved in this case in no way damaged the Elks Home when it was installed in 1961, and there is no indication that it caused any problems until the fire in 1970.

Support for plaintiff's position on the negligence count is found in the aforementioned triology of products liability cases. This case seems identical to *Sides* in that, as in *Sides*, what Judge Bryan terms (at 406 F.2d 448) an "unripe cause of action" (for the initial negligent manufacture) ripened into an ac-

---

4. If the court were somehow to conclude that plaintiff's assignor's right of action under the warranty count accrued in 1970, under Virginia law it would seem that the Uniform Commercial Code would apply to the action. *See* Humble Oil & Refining Company v. Copley, 213 Va. 449, 192 S.E.2d 735 (1972). The UCC, however, provides in § 8.2–725 of the Code of Virginia (1965 Added Vol.) that a breach of warranty occurs when tender of delivery is made, and the cause of action accrues at that point, regardless of the aggrieved party's lack of knowledge of the breach. The court's holding herein avoids the circuity of reasoning that would then follow.

tual cause of action upon the happening of a future event—the personal injury to plaintiff *Sides*, and in this case, the fire that damaged the Elks Home. To be sure, Judge Bryan noted by way of dicta in *Sides* that the plaintiff's employer had a right of action for the damage to his locomotive, apparently arising at the time of its purchase, just as there had been an immediate cause of action for the defective gas line in *Laburnum*. However, the employer in *Sides* was not seeking damages for his locomotive, just as the plaintiff in this case does not seek damages for the deep fryer. Nevertheless, the plaintiff employee in *Sides* was allowed to seek recovery for his injuries under the theory that the defendant manufacturer had negligently designed and built the locomotive in 1958—some ten years before the action in *Sides* was filed.

There seems to be no logical reason why this court should utilize a double standard and hold that plaintiff's cause of action accrued in this instance at any time other than the date of the fire, when under *Sides*, *Barnes* and *Caudill*, causes of action for personal injuries do not accrue until the actual date of the injury. This is especially so in view of the purposes of statutes of limitations announced by the Supreme Court of Virginia in Street v. Consumers Mining Corp., *supra*, 185 Va. at 575, 39 S.E.2d at 277:

> Statutes of limitation are statutes of repose, the object of which is to compel the exercise of a right of action within a reasonable time. They are designed to suppress fraudulent and stale claims from being asserted after a great lapse of time, to the surprise of the parties, when the evidence may have been lost, the facts may have become obscure because of defective memory, or the witnesses have died or disappeared.

The plaintiff's claim for property damages in the case at hand is certainly no more susceptible to fraud, or lost evidence, or the disappearance of witnesses than would be one for personal injuries —and under *Sides*, *Barnes* and *Caudill* there can be no doubt that if someone had been injured in the fire at the Elks Home, he could have brought an action against General Electric for alleged negligence.

Barnes v. Sears, Roebuck and Company, *supra*, is similar in import to *Sides*. Judge Butzner correctly noted that the plaintiff's cause of action for damage to his defective bicycle arose at the time it was purchased, citing *Laburnum*. Of course in *Barnes* there was an undiscovered defect in the bicycle itself at the time of purchase, just as there was an alleged defect in the deep fryer at the time of purchase, but there was no subsequent damage to any other of plaintiff Barnes' property, as there was here to the Elks Home, so the Fourth Circuit was not met with the problem faced by this court.

Nothing in Caudill v. Wise Rambler, Inc., *supra*, is inapposite to the holding of this court. The Supreme Court of Virginia speaks therein of a "potential cause of action for personal injuries" that existed since the date of purchase of the plaintiff's automobile, but which ʻcause of action did not accrue until the date of injury. The court reasoned simply that "[a] right of action cannot accrue until there is a cause of action," *Caudill*, 168 S.E.2d at 259, and stated:

> The essential elements of a good cause of action, whether based on an alleged breach of contract or on a tortious act, are a legal obligation of a defendant to the plaintiff, a violation or breach of that right or duty, and a consequential injury or damage to the plaintiff. In the absence of injury or damage to a plaintiff or his property, he has no cause of action and no right of action can accrue to him.

Obviously, since the Elks Home had not been damaged at the time of the purchase of the fryer, the Elks could not then have maintained an action for its damage. To say that the right of action accrued at some point in time before the

fire damage occurred is to say that there is no remedy in this case. As was said in *Caudill*, 168 S.E.2d at 259:

> Such an unjust and inequitable result is not the purpose of statutes of limitation. They are designed to compel the prompt assertion of an accrued right of action; not to bar such a right before it has accrued.

Most importantly, *Laburnum* is not in conflict with the holding herein. As Judge Bryan notes in *Sides*, the right to bring a cause of action in *Laburnum* arose immediately upon the negligent or defective installation of the pipe. "Suit therefor could have been brought then, before or without the explosion." *Sides, supra*, at 448. Here, the Elks had no cause of action for the defendant—manufacturer's alleged negligence, in respect to their National Home, until their building was later damaged. We can hardly ask that consumers come to court alleging merely the possibility that the product that they have purchased may be defective and harmful; until there is injury there is no cause for suit, as the court in *Sides, supra*, at 446–447 noted:

> [W]here the damage * * * arises from a *cause* not then immediately *effective*, * * * the cause of action does not arise until the injury can be shown. The reason and justice of this is perfectly apparent, for a plaintiff who merely feared ultimate damage * * * under such circumstances would invite defeat if he only relied upon his fears and was unable to prove any actual damage. So the courts have formulated the general rule thus: Whenever any injury, however slight it may be, is complete at the time the [act or omission] is completed, the cause of action then accrues; but, whenever the [act or omission] is not legally injurious, there is no cause of action until such injurious consequences occur, and it accrues at the time of such consequential injury. * * * [Louisville & N.R. Co. v. Saltzer, 151 Va. 165] 144 S.E. 456, at 457, quoting Southern Ry. Co. v. Leake,

140 Va. 438, 439, 125 S.E. 314. (Accent added.)

If this court may look to § 8–24.2 of the Code of Virginia, which was enacted in 1964, for guidance on the issue of when the right to sue on the negligence count accrued in this case, support for a time other than the time of installation of the deep fryer may be inferred. Section 8–24.2, relating to certain actions for damages arising out of defective or unsafe condition of improvements to real property, reads:

> No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property more than five years after the performance of furnishing of such services and construction.
>
> This limitation shall not apply to the manufacturer or supplier of any equipment or machinery or any other articles which are installed in or become a part of any real property either as an improvement or otherwise. This limitation shall not apply to actions against any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

Before it was amended in 1973 (by the addition of the first sentence of the second paragraph), § 8–24.2 had been interpreted in the case of Wiggins v. Proctor & Schwartz, Inc., 330 F.Supp. 350 (E.D.Va.1971) aff'd, Civil No. 71–1952 (4th Cir. March 8, 1972), to cover the manufacturer of a machine which

was permanently affixed to an existing building. The 1973 amendment would seem to apply to the case at hand, and specifically rule out the application of an accrual date of the date of installation to a claim for resultant property damage.

In the case of McCloskey & Company, Inc. v. Wright, 363 F.Supp. 223 (E.D. Va.1973) which was not considered by this court prior to its earlier ruling, Judge Merhige dealt with the Virginia law on periods of limitation. The action in *Wright* was brought by a building firm against a group of architects for damages allegedly incurred by virtue of a faulty construction design. The design was for a post office constructed by the plaintiff for the government, which post office developed a leaky roof and had to be modified by the builder to suit government expectations. Count I of that action alleged breaches of warranty and contract stemming from the tender of the allegedly defective designs. Citing *Laburnum*, the court held that the cause of action under this count arose at the time of tender of the plans, as technically had the government known of the defect it could have sued at that time for specific performance seeking correct changes or damages for the cost of acquiring a correct design. *Wright, supra*, 363 F.Supp. at 226 n.1. The count was therefore held barred by the five-year statute of limitations under § 8–13 of the Code of Virginia, which applies to contracts in writing not under seal, even though the actual damages did not occur until much later.

As to Count III in *Wright*, which sounded in tort, alleging negligence in design, the court thought that the right of action for the damages incurred in repairing the later physical damage to the post office had accrued at either the time of tender or acceptance of the plans. This result was reached even though the defect in the roof was not ascertainable until a later date—in fact, presumably not until the post office was constructed, it rained, and the roof leaked. The court termed this subsequent damage "consequential" damage, a claim for which would not survive, and therefore found it barred by the one-year limitation on such actions under § 8–24, once again citing *Laburnum*.

The resolution of Count I in *Wright* certainly is not at variance with the holding of this court, as it deals with breaches of contract and warranty. Count III seems clearly to fall within the ambit of § 8–24.2 (which was not cited by the court in *Wright*), the cause of action therefore accruing at the time the allegedly defective plans were furnished; as has been stated, § 8–24.2 would not apply to the case at hand. Terming the subsequent damage "consequential" in Count III, and applying a one-year limitation seems to be a result of a misreading of *Laburnum*[5] and an erroneous application of Virginia law. (This court deals with the problem of direct/indirect damages below.)

In sum, to allow plaintiff in the instant case to seek recovery under a negligence count, in the opinion of this court is in principle indistinguishable from allowing the plaintiffs in *Sides, Barnes,* and *Caudill* to pursue relief. The Elks in the case at hand were in no better position to guard against damage to their property until they were cognizant of the alleged defective condition of the deep fryer than were the plaintiffs in the above trilogy of cases able to guard against injury to their persons.

The Fifth Circuit recently had before it a case roughly similar to the instant one. In Alabama Great Southern Railroad Co. v. Allied Chemical Corp., 467 F.2d 679 (5th Cir. 1972), the plaintiff railroad sought to recover against the manufacturer of a wheel and the owner

---

5. The Supreme Court of Virginia applied the one-year period of limitations in § 8–24 to Counts 1 and 3 in *Laburnum*, which alleged fraudulent conduct on the part of the defendant after the work complained of in Count 2 had been performed, allegedly in an unworkmanlike manner, and to which the court applied the five-year period of limitations in § 8–24. *Laburnum*, 80 S.E.2d at 578, 583.

and builder of a tank car for damages arising out of the derailment in 1969 of a propane gas tank car that caused several deaths and extensive property damage. The tank car and wheel had been sold to the railroad in 1962; under Mississippi law,[6] which was held applicable, a six-year statute of limitations applied. The plaintiff alleged common law negligence, strict product liability, and breach of warranty. Having already settled claims with the injured parties, the railroad was seeking indemnity in its suit. Making no distinction between those claims arising out of personal injuries and those arising out of property damage, the court concluded that the railroad's cause of action did not accrue until the derailment in 1969, and that the suit was timely filed.

Believing, as did the Fifth Circuit in Alabama Great Southern Railroad Co. v. Allied Chemical Corp., *supra*, at 684, that a result contrary to that expressed herein would "fly in the face of elementary concepts of justice," this court concludes that a Virginia court would hold that the Elks' cause of action as to the negligence count, Count I accrued at the time of the fire.

At this point the court's inquiry becomes: which particular period of limitations under § 8–24 applies to Count I— one year or five? As stated in § 8–24, whether or not one applies a one-year or five-year time period depends upon survival. If the action is one which would survive the death of either party, the proper time period is five years; if it would not survive, the one year restriction applies. Progressive Realty Corp. v. Meador, 197 Va. 807, 91 S.E.2d 645 (1956). In Virginia survival depends upon whether or not the action is an injury to property or to the person. If the wrong is against property, real or personal, then the action will survive if it is a direct injury to property, and not an indirect or consequential injury to property which re-

sults from a direct injury to the person. Holdford v. Leonard, 355 F.Supp. 261 (W.D.Va.1973); *Laburnum, supra,* 80 S.E.2d at 579; Mumpower v. City of Bristol, 94 Va. 737, 27 S.E. 581 (1897). And as was stated in Friedman v. Peoples Service Drug Stores, Inc., 208 Va. 700, 160 S.E.2d 563, 565 (1968), it is "the object of an action and not its form [that] determines which statute of limitations is applicable."

As to Count I herein, the plaintiff seeks damages for the direct injury to its assignor's property, and nothing else—there is no element of personal injury involved. The defendant cites *Laburnum* and *Wright* for the proposition that the damage to the Elks Home is but "consequential damage" as to its original alleged direct damage—i. e., the defect in the deep fryer. Once again, the factual distinction between *Laburnum* and the case at hand must be emphasized. As this court notes in Holdford v. Leonard, *supra,* 355 F.Supp. at 264–265, in *Laburnum* the court drew the demarcation line between a direct and indirect injury immediately after any initial harm—in that case, after the installation of the faulty pipe. In this case, the initial harm to the Elks Home did not occur until the time of the fire. The statute of limitations began to run from that time as to the *direct* injury to the Elks Home. There was really no "consequential" damage to the Elks Home—it occurred all at one time. Just as the court in *Laburnum* applied the five-year period of limitations to Count 2 therein, 80 S.E.2d at 583, this court must apply the five-year period of limitations in § 8–24 to Count I in this case.

Carva Food Corporation v. Dawley, 202 Va. 543, 118 S.E.2d 664 (1961) and Travelers Insurance Company v. Turner, 211 Va. 552, 178 S.E.2d 503 (1971), also cited by defendant, are not in conflict with this court's resolution of the above issue. In *Carva* the plaintiff had relied on the representation of an insurance

---

**6.** Mississippi has adopted the policy of strict tort liability for defective products set forth in Restatement (Second) of Torts § 402A.

agent that the damage resulting from an accidental discharge of plaintiff's sprinkler system would be covered by his insurance policy. Such damage was in fact not covered, and when an accidental discharge caused damage to the plaintiff's premises during a windstorm, plaintiff sued the agent to recover his loss. The court held that the damages caused by the accidental discharge were but an indirect result of the misrepresentation, as the damages were in reality caused by the intervening windstorm, which was not caused by any action on the part of the agent.

In *Travelers Insurance Company,* an insurance agent failed to obtain automobile liability insurance as directed by his customer, and after a subsequent automobile accident the customer's assignee sought to hold the agent responsible for the loss. The Court held that the claim was not assignable, observing that the tests for survivability and assignability were the same, and that but for the intervening event of the customer's negligence, there would have been no damage at all. Needless to say, the agent had nothing to do with causing the automobile accident itself.

In the case at hand, defendant's alleged negligence was the alleged direct cause of the fire leading to the property damage. If there were any intervening causes—such as misuse of the deep fryer over the years, ordinary wear and tear, or some other factor—they can be brought out at trial, but for now plaintiff has stated a cause of action under Count I that alleges a direct, assignable, (defendant has not challenged the plaintiff's right to bring this count as an assignor) and survival cause of action to which the five-year period of limitations under § 8–24 applies.

## Count V

Count V and paragraph (f) of Count I allege that defendant failed to warn potential users of potential defects in the deep fryer, defects which it allegedly knew of or of which it should have known in the exercise of reasonable care. The court interprets this to allege a continuing duty to warn, amounting to continuing negligence up to the time of the fire. *See e. g.,* Tyler v. Street & Co., 322 F.Supp. 541, 544 (E.D.Va.1971), in which the plaintiffs were accorded an opportunity to prove that they had been harmed within two years of the commencement of their action as a result of the defendant's negligence in failing to warn them of alleged product defects, even though recovery for their original personal injuries was barred by the applicable two-year statute of limitations.

Assuming that a cause of action as to Count V and paragraph (f) of Count I arose at the time of the fire, the court still must determine which of the two periods of limitation under § 8–24 applies. As the object of the charge of negligent failure to warn is to recover for the property damage that was done, the court must conclude that the action would survive, and that therefore this count is timely brought since it is within the five year period of limitation that would apply. This conclusion is based simply upon the fact that the injury complained of herein involves only property damage, and as to any injuries of a personal nature that can be construed out of the alleged failure to warn they are incidental in nature, at best. The Supreme Court of Virginia made this distinction clear in Winston v. Gordon, 115 Va. 899, 80 S.E. 756, 764 (1914), where it said:

> The question whether an action survives depends upon the nature of the action and not upon the form of it. It has been held that the line of demarcation at common law, separating those actions which survive from those which do not, is that in the first the wrong complained of affects, primarily and principally, property and property rights, and the injuries to the persons are merely incidental, while in the latter the injury complained of is to the person, and the property and rights of property affected are merely incidental. [Citing 1 Cyc. 49.]

Conclusion

In accordance with the reasons previously stated, defendant's motion to dismiss Count II is hereby granted, and the motion to dismiss Counts I and V is denied. Since neither party has yet discussed whether Counts III and IV can be maintained, the court will rule upon the motion to dismiss these counts after the issue presented therein has been developed further before this court.[7]

The court is of the opinion that this decision entered herein involves a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from the decision may materially advance the ultimate determination of this litigation, pursuant to the provisions of Title 28, U.S.C. sec. 1292(b). An appeal is granted.

---

7. If these counts were to be allowed, the principles to be applied to them in regard to the statute of limitations would appear to be roughly the same as those applied to Count

I. See Dreisonstok v. Volkswagenwerk Aktiegesellschaft, 489 F.2d 1066, 1068 n. 2 (4th Cir. 1974).